IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SMART PACKAGING SOLUTIONS SA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 21-557-LPS |
| PERFECT PLASTIC PRINTING CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT PERFECT
PLASTIC PRINTING CORP.'S MOTION TO DISMISS
FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM**

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Gregory F. Corbett
Charles T. Steenburg
Turhan F. Sarwar
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8249

Dated: March 8, 2022

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS .................................................... 1

II.   SUMMARY OF THE ARGUMENT ............................................................. 1

III.  STATEMENT OF FACTS ......................................................................... 3

    A.   Technological Background ................................................................ 3

    B.   Asserted Patents .............................................................................. 4

    C.   Accused Products ............................................................................ 5

IV.   LEGAL STANDARDS ............................................................................ 5

V.    ARGUMENT ......................................................................................... 6

    A.   SPS Fails to Meet Its Burden to Plead or Establish Standing ....................... 6

    B.   SPS Fails to Plead Plausible Facts Supporting Direct Infringement ............ 8

        1.   SPS Fails to Plausibly Allege an "Extension Antenna" Component in the
           Accused Products .......................................................................... 9

        2.   SPS Does Not Allege Factual Support Regarding the "Phase" in Which
           Components of the Accused Products Are "Connected" .......................... 12

        3.   SPS Does Not Allege Factual Support for the "Sense" of Components of
           the Accused Products ..................................................................... 13

        4.   SPS's Bare Allegation that a Component of the Accused Products Is in a
           "Third Area… in the Upper Portion of the Card Body" Is Conclusory
           and Inconsistent ........................................................................... 15

        5.   SPS's Bare Allegation that a Component of the Accused Products Is
           "Only" in a "Top Half of the Card Body" Is Conclusory and Inconsistent ....... 16

        6.   SPS Fails to Plausibly Allege "Inner" or "Outer" Windings in the
           Accused Products .......................................................................... 17

    C.   SPS Fails to Adequately Plead Induced Infringement .............................. 19

VI.   CONCLUSION ..................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abbott Labs. v. Diamedix Corp.*,
    47 F.3d at 1128 (Fed. Cir. 1995) .................................................................................. 8

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018) ............................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 6

*Babbage Holdings, LLC v. Activision Blizzard, Inc.*,
    2014 WL 2115616 (E.D. Tex. May 15, 2014) ............................................................ 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 6, 11, 12, 20

*Bos. Sci. Corp. v. Nevro Corp.*,
    415 F. Supp. 3d 482 (D. Del. 2019) ........................................................................... 20

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ................................................................................. 6, 19

*Cephalon, Inc. v. Watson Pharm., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013) ................................................................................... 8

*Clouding IP, LLC v. Google Inc.*,
    61 F. Supp. 3d 421 (D. Del. 2014) ..................................................................... passim

*DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*,
    2020 WL 2220031 (D. Del. May 7, 2020) ................................................................. 14

*DSU Med. Corp. v. JMS Co., LTD.*,
    471 F.3d 1293 (Fed. Cir. 2006) ............................................................................. 19, 20

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*,
    914 F.3d 1347 (Fed. Cir. 2019) ................................................................................... 9

*F2VS Techs., LLC v. Aruba Networks, Inc.*,
    2018 WL 1732152 (D. Del. Apr. 10, 2018) ............................................................... 20

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) .................................................................................................... 19

*In re Bill of Lading*,
    681 F.3d 1323 (Fed. Cir. 2012) ................................................................................. 19

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ...................................................... 13

*Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001) ............................................... 7, 8

*Intell. Ventures v. AT&T Mobility*,
    203 F. Supp. 3d 436 (D. Del. 2016).......................................... 5, 7

*Mallinckrodt Inc. v. E-Z-EM Inc.*,
    670 F. Supp. 2d 349 (D. Del. 2009).......................................... 20

*McDermott v. Clondalkin Grp., Inc.*,
    649 F. App'x 263 (3d Cir. 2016) .............................................. 13

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) ............................................... 6, 7

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ..................................................... 5

*Mosaic Brands, Inc. v. The Ridge Wallet LLC*,
    2020 WL 5640233 (C.D. Cal. Sept. 3, 2020) ........................... 17

*Propat Int'l Corp. v. RPost US, Inc.*,
    473 F.3d 1187 (Fed. Cir. 2007) ............................................... 7, 8

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
    2020 WL 6781566 (E.D. Tex. Nov. 17, 2020) ......................... 17

*RainDance Techs., Inc. v. 10x Genomics, Inc.*,
    2016 WL 927143 (D. Del. Mar. 4, 2016) ................................. 8

*SuperInterconnect Techs. LLC v. HP Inc.*,
    2019 WL 6895877 (D. Del. Dec. 18, 2019) ............................. 11

*Toxgon Corp. v. BNFL, Inc.*,
    312 F.3d 1379 (Fed. Cir. 2002) ............................................... 5

*Uniloc 2017 LLC v. Zenpayroll, Inc.*,
    2020 WL 4260616 (D. Del. July 23, 2020) .............................. 8

*Vervain, LLC v. Micron Tech., Inc.*,
    2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ............................... 9

*WiAV Sols. LLC v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010) ............................................... 6

*Xpoint Techs., Inc. v. Microsoft Corp.*,
   730 F. Supp. 2d 349 (D. Del. 2010) ......................................................................................... 20

**STATUTES**

35 U.S.C. § 271(b) ................................................................................................................................. 19

35 U.S.C. § 271(c) ................................................................................................................................. 20

## I.     NATURE AND STAGE OF PROCEEDINGS

This is Perfect Plastic Printing Corp.'s ("PPP") opening brief in support of its motion to dismiss the complaint of plaintiff Smart Packaging Solutions SA ("SPS") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

SPS's Complaint alleges that PPP infringes four patents—U.S. Patent Nos. 9,033,250 ("the '250 patent"), 9,165,240 ("the '240 patent"), 9,195,932 ("the '932 patent"), and 9,633,304 ("the '304 patent") (collectively, the "Asserted Patents")—which broadly relate to smart cards using a contactless interface, *e.g.*, credit cards that are read by tapping them on a reader.  The inventors do not claim to have invented contactless smart cards—indeed, the Asserted Patents admit that such cards were well-known long before the patents were filed.  Instead, the patents are related to known arrangements of basic smart card components (*e.g.*, card antenna, coupler coil, extension antenna).

SPS's allegations are improperly before the Court and fail to state a claim upon which relief can be granted, including because (1) SPS fails to plead facts to support standing, (2) SPS fails to plead any plausible facts that PPP directly infringes, and (3) SPS fails to plead facts supporting induced infringement, including that PPP had pre-suit knowledge of the patents or the requisite specific intent to induce infringement.

## II.     SUMMARY OF THE ARGUMENT

1.     SPS fails to plead facts to support standing.  SPS did not invent anything; it does not own the Asserted Patents.  Instead, SPS premises its standing to bring suit for each patent on a conclusory statement alleging a license purportedly conferring the exclusive right to assert the patent against all infringers throughout the United States.  SPS alleges ***no other rights***—*e.g.*, the exclusive right to practice the purported inventions, or the right to freely transfer its rights to other entities.  Indeed, it is public record that rights in the Asserted Patents were transferred from SPS's purported licensor to another entity (evidently without SPS's involvement) ***months after*** the suit

was filed.  Because SPS fails to allege that it is in fact an exclusive licensee having "all substantial rights" in the Asserted Patents—as it must to confer standing to sue on its own (*i.e.*, without the actual patent owner)—the Complaint is fatally deficient and must be dismissed on this ground alone.  *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 428-29 (D. Del. 2014).

2.      SPS fails to plead facts plausibly (or even possibly) establishing that PPP directly infringes any asserted claims of the Asserted Patents.  Rather than allege specific ***facts*** about PPP's accused products—samples of which SPS purportedly possessed—SPS simply recites each element of the asserted claims and uses often indecipherable annotations to allege (without explanation) that arbitrary portions of the accused products meet those elements.  For example, with respect to three of the four Asserted Patents (the '250, '932, and '304 patents), the claims require an "extension antenna" component, but SPS reads the "extension antenna" onto what those patents themselves call a "dummy turn capacitor"—a ***different*** prior art structure that the patents specifically and unambiguously emphasized is ***not*** an "extension antenna."  And with respect to the other asserted patent (the '240 patent), the claims require two booster antenna components "connected in reverse phase," but SPS does not even bother to allege facts related to the connection between components, let alone their "phase"; instead, SPS makes unsupported allegations regarding winding "sense[s]"—a entirely different concept not even claimed in the '240 patent— and cursorily states "on information and belief" this leads to infringement.  To the extent SPS's allegations are understandable, there is no notice of how PPP's products infringe—only conclusions.  And even where the labels or allegations are understandable, SPS's conclusions— such as those regarding "top half," "upper portion," "inner" and "outer" windings—are inconsistent with not only the Asserted Patents themselves, but other allegations in SPS's own claim charts. On the balance of these pleading defects alone, the Complaint should be dismissed.

3.      SPS fails to plead the requisite specific intent and deliberateness necessary to support its conclusory allegations of induced infringement.  For example, SPS does not allege that PPP had any pre-suit knowledge of the Asserted Patents or specific intent to infringe, and SPS's allegations of indirect infringement should be dismissed for this additional reason.

## III.    STATEMENT OF FACTS

### A.    Technological Background

The Asserted Patents relate to dual interface "smart cards"—*e.g.*, credit cards with radio-frequency identification ("RFID") computer chips—in which the smart card's chip can interface with external card readers ***without physical contact*** by using antenna components on the smart card to communicate with the reader via electromagnetic fields.  D.I. 1 ("Compl."), ¶¶ 1-4.

As the Asserted Patents explain, smart cards capable of such contactless communication—using, *e.g.*, spiral/coil-shaped antenna components—were well-known.  *E.g.*, Compl., Exh. A, 1:37-54 (referencing ISO 14443, an established international standard governing contactless smart cards), 23:5-24:3 (describing numerous "[p]rior [a]rt" smart cards with antennas formed from spiral/coil-shaped conductors).  One example the Asserted Patents cite is U.S. Patent No. 8,130,166 ("Ayala"), filed in 2008, shown below at left.  The allegedly inventive antennas in the Asserted Patents likewise comprise spiral/coil-shaped components, as shown below at right.



Incorporated Ayala reference, FIG. 6.                    Compl., Exh. A, FIG. 4E.

## B.    Asserted Patents[1]

The Asserted Patents concern arrangements of conventional antenna components for smart cards using a contactless interface.  The '250, '932, and '304 patents call the antenna for such a smart card a "booster antenna" and describe a basic arrangement with three booster antenna "components": (1) a "card antenna (CA)" (a spiral that extends around the card's periphery), (2) a "coupler coil (CC)" (a spiral that couples the smart card chip to the booster antenna), and (3) an "extension antenna (EA)" (a third spiral that contributes to booster antenna's inductance). *E.g.*, Compl., Exh. A, Abstract; Exh. C, Abstract; Exh. D, Abstract.  The '250, '932, and '304 patents' claims require these three basic components, and add additional layout requirements. Compl., Exh. A, 26:33-49; Exh. C, 48:2-9, 48:18-26; Exh. D, 48:39-46.  The '250 patent requires the three components each be disposed in three distinct areas in the "upper portion" of the card body, with the "extension antenna" in a "third area" that is "separate from the first" and "second area[s]." Compl., Exh. A, 26:33-49.  The '932 patent requires two of the three components to have "opposite" winding "sense[s]" relative to each other (Compl., Exh. C, 48:8-9, 48:25-26)—a term which the patent uses to refer to an individual spiral/coil-shaped component's physical orientation (clockwise or counterclockwise).  *Id.*, 33:50-53.  The '304 patent requires two of the three components to have different "pitch[es]"—a term which the patent uses to refer to the distance between adjacent turns of a spiral/coil-shaped component.  Compl., Exh. D, 48:45-46, 13:1-18.

The '240 patent concerns only *one* of the components described above—the "card antenna"—which the '240 patent says has two windings. Compl., Exh. B, Abstract. The '240 patent requires that these windings be arranged as "an inner winding and an outer winding" and

---

[1] This section is only intended to provide background on the patents to help explain why SPS's allegations fail to provide PPP sufficient notice of its allegations. PPP reserves the right to offer claim constructions that differ from the high-level background provided herein.

be "connected in reverse phase with one another." *Id.*, 26:7-12, 26:37-42. "Phase" is ***not*** the same concept as "sense," the term recited in the '932 patent. The '240 patent instead uses the term "phase" to describe, for example, the "voltages induced" in windings due to how the windings are "connected." *E.g., id.*, 14:24-32, 15:11-17, 18:7-13.

### C.   Accused Products

SPS alleges that PPP markets infringing "dual interface smart cards" under "various names, including Contactless EMV Technology and Dual Interface/Contactless technology." Compl., ¶ 17. SPS does not clarify which products are accused but includes claim charts with pictures of an alleged "example PPP card" that SPS possesses, which purportedly embodies contactless EMV technology. Compl., Exh. E, at 190.

## IV.   LEGAL STANDARDS

Rule 12(b)(1) authorizes dismissal for lack of subject matter jurisdiction over suits brought by a party with inadequate standing. *Clouding IP*, 61 F. Supp. 3d at 428; *Intell. Ventures v. AT&T Mobility*, 203 F. Supp. 3d 436, 442-43 (D. Del. 2016); *see also* Rule 12(h)(3) ("If the court determines ***at any time*** that it lacks subject-matter jurisdiction, the court ***must dismiss*** the action.").[2] Regional circuit law governs procedural questions related to motions for such dismissal that are not unique to patent law. *Id.* (citing *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002)). Under Third Circuit law, when the Court's subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction exists— including the existence of standing. *Clouding IP*, 61 F. Supp. 3d at 428 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Federal Circuit law governs questions related to patent law, such as whether a licensee has "all substantial rights" in a patent to confer

---

[2] Emphasis is added unless otherwise noted.

standing on the licensee to bring an infringement suit without joining the patent owner. *See Clouding IP*, at 429 (citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007)).

Dismissal pursuant to Rule 12(b)(6) is proper where a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is met when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[M]ere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1355 (Fed. Cir. 2021). It is not sufficient to merely allege facts that are consistent with liability, as doing so "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Rather, factual allegations must "raise a right to relief above the speculative level." *Id.* at 555.

## V.     ARGUMENT

### A.     SPS Fails to Meet Its Burden to Plead or Establish Standing

"If a plaintiff lacks standing at [the time suit is brought], the Court lacks subject matter jurisdiction and the case must be dismissed." *Clouding IP*, 61 F. Supp. 3d at 428. SPS bears the burden of proving that it has **both** "constitutional and prudential" standing. *Id.* "The touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent." *Id.* (citing *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010)). Prudential standing requires "that a litigant assert [its] own legal rights and not rely on the rights… of third parties." *Id.* at 429.

SPS is the only named plaintiff. To support standing, SPS alleges only that it is an "exclusive licensee" and "has the exclusive right to assert the… patent against any and all

6

infringers throughout the United States and in all fields of use."  Compl., ¶¶ 10-13.  SPS does not allege any other rights in the patents.  ***This is not enough to confer standing.***

SPS's alleged designation as an "exclusive licensee" cannot be confirmed because SPS omitted its license from its pleadings.  Nor would such a designation be dispositive in any event.  *See Morrow*, 499 F.3d at 1340 n.7 ("[W]e determine the substance of the rights conferred on [a] party, ***not to the characterization of those rights as exclusive licenses***…").  Indeed, "***exclusive licensees***… who hold 'exclusionary rights and interests created by the patent statutes, ***but not all substantial rights*** to the patent'" still "must… enforce[]" such rights "through or in the name of the owner of the patent" in order to have prudential standing.  *Clouding IP*, 61 F. Supp. 3d at 429 (citing *Morrow*, 499 F.3d at 1339-40) (dismissing complaint brought by licensee for lack of standing where "all substantial rights" were not transferred); *see also Intell. Ventures*, 203 F. Supp. 3d at 443 (dismissing complaint with prejudice for lack of prudential standing where exclusive licensee having less than "all substantial rights" filed suit without naming the patent owner as a co-plaintiff).  In other words, an exclusive licensee has standing to sue on its own only if it has "***all substantial patent rights***."  *Clouding IP*, 61 F. Supp. 3d at 429-30; *Intell. Ventures*, 203 F. Supp. 3d at 443-46.

It is well-established that the right to sue does not constitute "all substantial rights" and thus is not sufficient to confer SPS standing to sue alone.  *E.g.*, *Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187, 1191-92 (Fed. Cir. 2007) (holding that licensee lacked "all substantial rights" where licensor retained the right to commercial proceeds, the right to veto licensing/litigation decisions, and the right to veto transfers of the licensee's rights); *Intell. Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1344-45 (Fed. Cir. 2001) (holding same where licensor was required to consent to litigation in certain cases, had to be consulted in litigation in all other

cases, and could prevent the licensee from assigning its rights); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d at 1128, 1132-33 (Fed. Cir. 1995) (holding same where licensor had retained right to make, use, and sell products embodying inventions claimed in patents).

SPS has not alleged ***any*** right in the Asserted Patents ***aside*** from the right to sue. In particular, SPS has not alleged that it has "all substantial rights" in the Asserted Patents. For example, SPS has not alleged that it can freely transfer its rights to others, or that that it has the exclusive right to make, use, and sell the claimed inventions. *Propat*, 473 F.3d at 1191-92; *Intell. Prop. Dev.*, 248 F. 3d at 1344-45; *Abbott Labs*, 47 F.3d at 1132-33. Indeed, it is a matter of public record that rights ***still held by*** Féinics AmaTech Teoranta, SPS's purported licensor (Compl., ¶¶ 10-13), were transferred to another entity several months after SPS brought suit—confirming that "all substantial rights" are ***not*** in SPS's hands. Br., Exh. 1 (showing transfer of rights in the asserted patents—properties 10, 15, 18, and 34—on December 14, 2021). SPS thus fails to meet its burden, and the Complaint should be dismissed under Rule 12(b)(1). *Clouding IP*, 61 F. Supp. 3d at 436 (granting motion to dismiss for lack of prudential standing).

## B.    SPS Fails to Plead Plausible Facts Supporting Direct Infringement

Counts I-IV of SPS's Complaint should also be dismissed because SPS has not plausibly alleged direct infringement of any claim in the Asserted Patents. "To prove infringement, the patentee must show that an accused product embodies all limitations of [an asserted] claim either literally or by the doctrine of equivalents." *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013); *see RainDance Techs., Inc. v. 10x Genomics, Inc.*, 2016 WL 927143, *2-3 (D. Del. Mar. 4, 2016). Courts applying the *Twombly/Iqbal* standard to patent infringement complaints require plaintiffs to set forth sufficient facts to plausibly allege that the accused product embodies every limitation in the asserted claims. *See*, *e.g.*, *Uniloc 2017 LLC v. Zenpayroll, Inc.*, 2020 WL 4260616, *2-5 (D. Del. July 23, 2020). Additionally, "[o]ne who does not infringe an

independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019).

### 1.    SPS Fails to Plausibly Allege an "Extension Antenna" Component in the Accused Products

The asserted claims of the '250, '932, and '304 patents all recite a "booster antenna" comprising an "extension antenna" component (Compl., Exh. A, 26:33-49; Exh. C, 48:2-9; Exh. D, 48:39-46)—a component which the inventors repeatedly emphasized is an alleged point of novelty.  Compl., Exh. A, 23:13-14, 23:29-30; Exh. C, 25:37-38, 25:53-54; Exh. D, 26:1-2, 26:16-17).  *See also* Br., Exh. 2, at 6 ("[The prior art] fails to show any element analogous to Applicant's extension antenna (EA).").  "[A] higher level of detail in pleading infringement may" be demanded of plaintiffs for "elements clearly 'material' to novelty and non-obviousness."  *Vervain, LLC v. Micron Tech., Inc.*, 2022 WL 23469, *5 (W.D. Tex. Jan. 3, 2022).

Yet SPS's allegations pertaining to the claimed "extension antenna" component are nothing more than conclusory recitations of claim language paired with conclusory annotations.  *See* Compl., Exh. E, at 196, 199; Exh. G, at 210, 212-13, 216-17; Exh. H, at 220, 222, 224.  As discussed below, SPS fails to plausibly allege an "extension antenna" component in the accused products because it confusingly maps the "extension antenna" onto a "dummy turn" ***capacitor***—a prior art structure which the patents unambiguously emphasize is ***not*** an extension antenna.

The '250, '932, and '304 patents each discuss dummy turn capacitors in a section entitled "***Distinguishing Over Some of the Prior Art***," while referencing U.S. Patent App. Pub. No. 2013/0146671A1 ("Grieshofer").[3]  Compl., Exh. A, 23:5, 23:39-45, 23:54-60; Exh. C, 25:27-28,

---

[3] Grieshofer is "incorporated by reference" into each of the '250, '932, and '304 patents.  Compl., Exh. A, 3:40-41, 23:36-37; Exh. C, 3:57-58; Exh. D, 3:64-65.

25:67-26:2, 26:12-19; Exh. D, 25:60, 26:31-32, 26:43-49.  According to the patents, Grieshofer "discloses a booster antenna structure for a chip card, which may include an additional electrically conductive structure connected to the booster antenna." Compl., Exh. A, 23:36-39; Exh. C, 25:60-63; Exh. D, 26:23-26. The patents state that "[t]he additional electrically conductive structures disclosed" in Grieshofer "are ***principally capacitive structures***" like, for example, the "***dummy turn as capacitor***" in FIG. 12B (reproduced below).  Compl., Exh. A, 23:39-45; Exh. C, 25:63-26:2; Exh. D, 26:26-32.  As the patents explain, "dummy turn 1214" ("which forms the capacitor") comprises "two conductor tracks" 1220 and 1222 "extending in parallel next to one another." Compl., Exh. C, 27:3-4, 27:12-20; Exh. D, 27:34-35, 27:41-49.



Incorporated Grieshofer reference, FIG. 12B.

The patents say that a dummy turn capacitor like above only "negligibl[y] contribut[es] to the inductance of the booster antenna structure" (if at all) and is thus ***unlike*** extension antennas "in the present invention," which "contribute to the inductance of the booster antenna."  Compl., Exh. A, 23:55-24:3; Exh. C, 26:12-19, 27:35-44; Exh. D, 26:43-49, 27:63-28:5.

Despite these unambiguous statements seeking to distinguish extension antennas over "dummy turn" capacitors, SPS perplexingly points to the accused product's "dummy turn" capacitor—with two parallel conductor tracks (pink and green below, in SPS's own annotations),

just like the prior art structure the '250, '932, and '304 patents describe—and alleges, without facts or explanation, that it is an extension antenna.



Compl., Exh. E, at 199.

The implausibility of this allegation is striking when the accused capacitor (above) is compared to the "dummy turn" capacitor in FIG. 12B of the incorporated (and distinguished-over) Grieshofer reference (below), annotated to highlight parallel conductor tracks 1220 (pink) and 1222 (green).



Incorporated Grieshofer reference, FIG. 12B (excerpted and annotated).

A complaint alleging patent infringement is sufficiently pled only if it provides PPP with "fair notice of what the… claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007); *see SuperInterconnect Techs. LLC v. HP Inc.*, 2019 WL 6895877, *2 (D. Del. Dec. 18, 2019) (holding that complaint failed to provide fair notice of claims by not explaining how characteristics of accused devices related to asserted claims). In view of the prior art "dummy turn" capacitor structures that the '250, '932, and '304 patents specifically "distinguish[] over," SPS has not alleged that the accused products include an extension antenna component. Because

11

the "extension antenna" is required in each asserted claim of the '250, '932, and '304 patents, all of SPS's allegations of infringement for these three patents must be dismissed.

### 2. SPS Does Not Allege Factual Support Regarding the "Phase" in Which Components of the Accused Products Are "Connected"

Claim 1 of the '240 patent is representative of the asserted independent claims in the '240 patent and recites "[a] card body for a smart card, comprising: a card antenna... wherein the card antenna comprises ***two windings***, an inner winding and an outer winding, ***connected in reverse phase*** with one another." Compl., Exh. B, 26:7-12. The ***only*** allegation that SPS offers regarding the term "connected in reverse phase" is that "[o]n information and belief, connecting the two windings in such a manner as to give different phases to the different windings results in the two windings being in reverse phase with one another." Compl., Exh. F, at 204, 206. This is a meaningless, circular statement—"on information and belief, connecting the two windings in such a manner [that infringes] results in [infringement]"—and it provides **_no_** notice to PPP of how its products purportedly infringe or what SPS even believes the '240 patent's claims cover. SPS alleges ***no*** facts about how **_any_** components are "***connected***," let alone whether they are "connected ***in reverse phase***." SPS thus fails to provide PPP with "fair notice of what the... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (2007).

In its claim charts relating to the '240 patent, SPS also includes conclusory assertions about a different term entirely—"**_sense_**." Compl., Exh. F, at 204, 206. The '240 patent does not recite the term "sense." "Sense" is claimed in the '932 patent (*see infra* § V.B.3)—a different patent with different claims—and relates to the ***physical orientation*** (clockwise or counterclockwise) of the conductor in an individual spiral-shaped component, for example the direction in which the wire of the component is laid in a card body. Compl., Exh. C, 33:50-53 ("[T]he 'sense' or laying direction (either clockwise CW, or counterclockwise CCW) of the various components may be the

same, or different than (e.g., opposite from) the sense of other components.").  SPS's statements regarding "sense" again provide *no* facts about how components are "connected," or whether they are "connected in reverse phase."  At best, SPS's "sense"-based allegations for the term "connected in reverse phase" are *non*-sensical—they conflate terms across the Asserted Patents and assume (without explanation) that different senses somehow create a *connection* in different phase.

Additionally, SPS's attempt to hide the deficiencies of its factual allegations with "on information and belief" pleadings should be rejected.  The use of "on information and belief" as a pleading tool is reserved for facts which are "peculiarly within the defendant's knowledge and control." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *see also Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018) (unpublished) (affirming dismissal of infringement claims pled "on information and belief" where plaintiff's attorney had access to and pictures of accused products).  SPS's claim charts show that SPS *literally possesses* what it thinks are PPP's products.  Compl., Exh. F, at 203-206.  SPS simply declined to map those products to the terms in its claims.  Because the "phase" limitation is a requirement in each asserted claim of the '240 patent, all of SPS's allegations of infringement for the '240 patent must be dismissed.

### 3. SPS Does Not Allege Factual Support for the "Sense" of Components of the Accused Products

Claim 1 of the '932 patent recites a booster antenna with card antenna, coupler coil, and extension antenna components where the "extension antenna component… has a *sense* opposite to that from the card antenna component."  Compl., Exh. C, 48:2-9.  Claim 5 by contrast simply requires that any "one of the components has a *sense* which is opposite one or more of the other components."  *Id.*, 48:19-26.  As noted above in § V.B.2, "sense" does not refer to the "phase" that results from the way windings are connected—instead "sense," relates to the physical orientation

13

(clockwise or counterclockwise) of a spiral-shaped component.  Compl., Exh. C, 33:50-53.  In its claim charts, SPS arbitrarily adds conclusory arrows over regions of the purported accused products, which purportedly reflect "sense (when winding inward toward the center of the card)." Compl., Exh. G, at 212-213.  SPS alleges on this basis that the purported extension antenna (green) and coupler coil (orange) have a counterclockwise "sense" and that the purported card antenna (blue) has a clockwise "sense":



Compl., Exh. G, at 213.

SPS's arbitrary arrows are inadequate.  SPS provides **no** factual support for drawing any arrow in any particular direction; no reasoning or rationale for assuming that the wire is "winding inward toward the center of the card" (as opposed to outward toward the periphery of the card); no allegations regarding a start or end point for determining "sense" for the alleged components; no allegations about how or why wires in the Accused Products are wound in one direction versus another for any given stretch of wire; and no guidance as to the appropriate orientation or "sense" that may be learned from the direction the wiring was actually laid into the card body.  SPS's charts simply superimpose conclusory arrows onto purported product images and parrot the claims.

SPS's arrows are not factual support for a plausible claim of infringement. *See*, *e.g.*, *DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*, 2020 WL 2220031, *2 (D. Del. May 7, 2020) ("[P]atentee cannot meet its obligation to assert a plausible claim of direct infringement under the

*Twombly/Iqbal* standard by merely copying the language of a claim limitation, and then flatly stating—without more—that Defendants' accused products have or perform such a limitation."). Because the above-discussed "sense" limitation is a requirement in each asserted claim of the '932 patent, all of SPS's allegations of infringement for the '932 patent must be dismissed for this additional, independent reason.

### 4.      SPS's Bare Allegation that a Component of the Accused Products Is in a "Third Area… in the Upper Portion of the Card Body" Is Conclusory and Inconsistent

Claim 1 of the '250 patent recites a "card body" comprising three "area[s]," and an "extension antenna" disposed in the "third area."  Compl., Exh. A, 26:33-49.  The "third area" is "in the ***upper portion*** of the card body which is separate from the first area and second area."  *Id.,* 26:46-47.  As noted above in § V.B.1, SPS fails to plausibly allege an extension antenna.  ***In addition***, the structure SPS identifies does not ***actually*** appear to be disposed in "a third area located in the upper portion… which is separate from the first area," as claimed.

SPS conceals this problem in its claim charts with annotations that suggest defined boundaries for the purported "extension antenna" structure which appear to ***completely ignore*** the actual shape of the structure SPS identifies. *Compare* Compl., Exh. E, at 193 *with id.*, at 196.



Compl., Exh. E, at 193.



Compl., Exh. E, at 196.

As is clear in SPS's unadorned (purported) image of the accused product (above at left), the wires which form the structure that SPS calls an "extension antenna" (dark green, above at right) actually extend **downwards** into what SPS calls the first area (dark blue, above at right).  Elsewhere in its claim charts, SPS arbitrarily assigns this portion of the structure it calls an "extension antenna" to the structure it calls a "card antenna."  Compl., Exh. E at 192.

Based on SPS's inconsistent claim charts, it is impossible to understand where SPS alleges the purported card antenna starts and the purported extension antenna terminates.  SPS ignores the apparent facts in its own alleged images of the accused products and, by relying only on haphazard, unclear labeling, makes no plausible attempt to identify any structure that is actually disposed in a third area "which is separate from the first area and the second area," as claimed. Compl., Exh. A, 26:46-49.  Because SPS has not plausibly alleged infringement for this limitation, which is a requirement in each asserted claim of the '250 patent, all of SPS's allegations of infringement for the '250 patent must be dismissed for this additional, independent reason.

> **5.     SPS's Bare Allegation that a Component of the Accused Products Is "Only" in a "Top Half of the Card Body" Is Conclusory and Inconsistent**

Claim 4 of the '240 patent recites "[t]he card body of claim 1, wherein the card antenna occupies **_only approximately a top half_** of the card body." Compl., Exh. B, 26:22-23. As shown in SPS's own claim charts, the component which SPS alleges is a card antenna extends **far** into the bottom half of the card, near the card's ostensible bottom edge—foreclosing the plausibility of SPS's infringement allegations with respect to this claim.



The example PPP card, illustrated below, includes a **card antenna** that occupies only approximately a top half of the card body. *See* '240 Patent, 24:5–19 and Figure 8.

Compl., Exh. F, at 205.

SPS simply ignores the term "only."  To the extent SPS suggests that dismissal is unwarranted because the term "approximately" can be construed to ***remove*** the term "only" from the claim, the Court need not engage in claim construction to dismiss infringement allegations which are "patently unworkable."  *See Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, 2020 WL 6781566, *5 (E.D. Tex. Nov. 17, 2020); *see also Mosaic Brands, Inc. v. The Ridge Wallet LLC*, 2020 WL 5640233, *4-5 (C.D. Cal. Sept. 3, 2020).  No claim construction—no matter how generously the Court construes claim 4—can transform the meaning of "***only*** approximately a top half" to include the ***entire*** bottom half of the card.  Because SPS has not plausibly alleged infringement for this limitation, SPS's allegations of infringement for claim 4 of the '240 patent must be dismissed for this additional, independent reason.

### 6.  SPS Fails to Plausibly Allege "Inner" or "Outer" Windings in the Accused Products

Several asserted claims (claims 1, 4, 6, and 9 of the '240 patent, claim 6 of the '932 patent, and claim 5 of the '304 patent) require that a component have "inner" and "outer" windings. Compl., Exh. B, 26:7-12, 26:22-23, 26:28-30, 26:37-42; Exh. C, 48:27-29; Exh. D, 48:56-58. SPS's claim charts only identify windings that the '240, '932, and '304 patents explain are "interleaved," ***and not*** "inner" and "outer" windings as claimed.  *See* Compl., Exh. F, at 204, 206; Exh. G, at 217; Exh. H, at 222.

The patents describe an "inner" winding as being "***disposed within*** (towards the interior of the card body…)" (Compl., Exh. C, 12:3-5; Exh. D, 12:21-22) or "disposed ***entirely inside***" (Compl., Exh. B, 18:61-63) an "outer" winding.  The patents ***separately*** describe windings that are "interleaved with one another" (Compl., Exh. B, 18:59-63; Exh. C, 47:30-34; Exh. D, 48:13-18), and the '240 patent ***specifically contrasts*** "interleaved" windings from windings that are arranged as "inner" and "outer" windings.  *Compare* Compl., Exh. B, 17:34-41 ("FIG[]. 4A… show[s] the card antenna CA… which may be a two-winding "quasi-dipole" having an inner winding E and an outer winding D") *with id.*, 18:59-63 ("FIG. 4D ***shows a <u>variation</u>*** of the card antenna, designated CA, which is similar to the card antenna CA of FIG. 4A, ***except that here the two windings E and D are interleaved with one another, <u>rather than</u> the one winding E being disposed entirely inside of the other winding D***.").  The '240 patent's FIG. 4A (showing inner and outer windings, annotated pink and green, respectively) and FIG. 4D (showing ***interleaved*** windings, highlighted pink and green) are reproduced below.



Compl., Exh. B, FIG. 4A (annotated).          Compl., Exh. B, FIG. 4D (annotated).

As can be seen by comparing the patent figures above with the purported product images below, notwithstanding SPS's allegations, the actual purported windings SPS identifies in the accused products are what the patents call "interleaved" windings—***not*** inner and outer windings.





Compl., Exh. G, at 217.                    Compl., Exh. F, at 204.

Given the patents' clear statements irreconcilably distinguishing the two types of windings, this a clear example of infringement allegations that "are actually inconsistent with and contradict infringement" and therefore are "insufficient to state a plausible claim." *Bot M8*, 4 F.4th at 1354. Because SPS fails to put forth a plausible allegation that the wiring of the accused products actually include an "outer" and "inner" winding as required, SPS's allegations of infringement of claims 1, 4, 6, and 9 of the '240 patent, claim 6 of the '932 patent, and claim 5 of the '304 patent must be dismissed for this additional, independent reason.

### C.     SPS Fails to Adequately Plead Induced Infringement

SPS's allegations of induced infringement are likewise insufficient.  Pleading inducement requires plausibly alleging facts sufficient to demonstrate: (1) knowledge of the existence of the patent, (2) direct infringement by another, (3) specific intent to induce the infringement, and (4) culpable conduct directed to encouraging the infringement. *See* 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011); *DSU Med. Corp. v. JMS Co., LTD.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).

Allegations of induced infringement must be dismissed if they do not plausibly suggest that the defendant specifically intended its customers to infringe and knew that its customer's acts constituted infringement.  *See In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *see also*

*F2VS Techs., LLC v. Aruba Networks, Inc.*, 2018 WL 1732152, *3 (D. Del. Apr. 10, 2018) ("To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts plausibly showing that the defendant specifically intended a third party to infringe the asserted patents and knew that the third party's acts constituted infringement."). Further, many of this district's decisions hold that knowledge of a patent's existence must **pre-date** the filing of the complaint or at least be contemporaneous with the purported infringement. *E.g.*, *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 491-92 (D. Del. 2019); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010); *Mallinckrodt Inc. v. E-Z-EM Inc.*, 670 F. Supp. 2d 349, 354 (D. Del. 2009).

Here, SPS has not alleged any facts suggesting that PPP had knowledge of the existence of any of the Asserted Patents. Thus, SPS's induced infringement claim must be dismissed for failing to plausibly allege a requisite element of the claim. *See Mallinckrodt*, 670 F. Supp. 2d at 354 n.1; *Xpoint Techs.*, 730 F. Supp. 2d at 357. Further, that dismissal should be with prejudice. *Babbage Holdings, LLC v. Activision Blizzard, Inc.*, 2014 WL 2115616, *2 (E.D. Tex. May 15, 2014).

SPS's failure to allege pre-suit knowledge is likewise fatal to any claim for contributory infringement—a theory SPS never even pleads. A single passing reference to 35 U.S.C. § 271(c) (Compl., ¶ 18) is inadequate on its face. *E.g.*, *Bos. Sci. Corp.*, 415 F. Supp. 3d at 492.

SPS also fails to allege any facts suggesting that PPP had the requisite "specific intent and action to induce infringement." *See DSU Med. Corp.*, 471 F.3d at 1305. The Complaint merely asserts one conclusory, generic allegation that "PPP induces its customers to use these infringing accused products, which do not have any substantial non-infringing use." Compl., ¶ 17. SPS provides nothing else; the allegation is no more than a recitation of the specific intent element of inducement and is insufficient to meet the pleading standard. *See Twombly*, 550 U.S. at 554-55.

## VI.    CONCLUSION

For the above reasons, PPP respectfully requests that this Court grant its Motion to Dismiss.

Respectfully submitted,

_/s/ Emily S. DiBenedetto_
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
edibenedetto@shawkeller.com
_Attorneys for Defendant_

OF COUNSEL:
Gregory F. Corbett
Charles T. Steenburg
Turhan F. Sarwar
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8249

Dated: March 8, 2022